*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0254P (6th Cir.)
File Name: 04a0254p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

YURI HARCHENKO,
OLEKSANDR HARCHENKO,
and TETIANA HARCHENKO,
     *Petitioners,*

    *v.*

IMMIGRATION AND
NATURALIZATION SERVICE;
JOHN ASHCROFT, Attorney
General,
     *Respondents.*

No. 02-3971

On Appeal from the Board of Immigration Appeals.
Nos. A73 123 548; A73 419 538; A73 418 915.

Submitted: June 9, 2004

Decided and Filed: July 30, 2004

Before: SILER and GIBBONS, Circuit Judges; REEVES,
District Judge.[*]

———————————

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

———————————

## COUNSEL

**ON BRIEF:** Richard T. Herman, RICHARD T. HERMAN & ASSOCIATES, Cleveland, Ohio, for Petitioners. Audrey B. Hemesath, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondents.

———————————

## OPINION

———————————

JULIA SMITH GIBBONS, Circuit Judge. Petitioner Yuri Harchenko appeals from the decision of the Board of Immigration Appeals ("BIA") denying his emergency motion to reopen, or in the alternative, to reinstate voluntary departure. Harchenko's initial petition for asylum was denied after a hearing on the merits on August 19, 1997. The Immigration Judge ("IJ") granted voluntary departure and Harchenko appealed the denial of his application for asylum to the BIA. The BIA dismissed his appeal and this court affirmed, finding that the BIA's denial of asylum and withholding of deportation was supported by substantial evidence in the administrative record. Prior to the issuance of this court's opinion in Harchenko's first appeal, he filed a motion to reopen based on an approved labor certification and "deteriorating human rights conditions in the Ukraine," and, in the alternative, requested reinstatement of the voluntary departure period. The BIA found that the motion to reopen was untimely and declined to exercise its *sua sponte* authority to reopen the proceedings pursuant to 8 C.F.R. § 3.2(a). The BIA also concluded that it lacked the authority to reinstate the period of voluntary departure because it was denying the motion to reopen. For the following reasons, the petition for review of the decision of the BIA is denied.

## I.

Harchenko and his family are natives and citizens of the Ukraine. They arrived in the United States in October 1994, with a B-2 visitor visa that allowed them to stay until April 20, 1995. On December 9, 1994, Harchenko filed a petition for asylum that included derivative petitions for his wife, Dr. Tetiana Harchenko, and son, Oleksandr. On March 12, 1996, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause, charging Harchenko with deportability for remaining in the United States for a time longer than permitted.

Harchenko's petition for asylum was denied initially on August 19, 1997. The IJ noted that she had "some problems with [Harchenko's] credibility" because his administratively-filed application alleged a fear of persecution on the basis of his Jewish ethnicity, while his supplemental application emphasized the likelihood that he would be threatened by criminals if he returned to the Ukraine. The IJ nonetheless assumed Harchenko's claims were credible and concluded that he had failed to establish a likelihood of present or future persecution in the Ukraine based upon his identity as a member of the Jewish faith, or as a Jewish national. An order was entered denying Harchenko's applications for asylum and the withholding of deportation and granting voluntary departure. The order noted that "if the [r]espondents fail to depart when and as required, the privilege of voluntary departure shall be withdrawn without further notice or proceedings and the following order shall become immediately effective: [r]espondents shall be deported from the United States to the Ukraine on the charges contained in the Orders to Show Cause."

Although Harchenko filed a timely notice of appeal with the BIA, his brief was not submitted on time and the BIA declined to grant an extension. *Harchenko v. INS*, No. 00-3789, 2001 WL 1429245, at *2 (6th Cir. Nov. 9, 2001) (*Harchenko I*). The BIA later denied his motion to consider

his untimely brief and affirmed the IJ's decision. *Id.* at *1. The BIA also reiterated the IJ's earlier grant of voluntary departure: "[T]he respondents are permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the district director; and in the event of failure to so depart, the respondents shall be deported as provided in the [original] order." This court affirmed the BIA's decision on November 9, 2001. *Id.*

Between the IJ's initial ruling and the BIA's decision to affirm, Harchenko filed a Form I-140 application for labor certification as a Licensed Physical Nurse at Broadview Multi-Care facility in Parma, Ohio. This application was approved by the INS on October 18, 2000. In light of the approved labor certification, the Harchenkos argued to the INS that they were eligible for an adjustment in status to permanent residents upon the reopening of their deportation proceedings. However, the INS advised them that they were barred from seeking an adjustment of status for five years pursuant to § 242B(e) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1252b (1996), due to their failure to leave the United States following the issuance of the BIA's May 2000 decision granting voluntary departure.

On October 30, 2001, the Harchenkos filed an emergency motion to reopen and, in the alternative, to request reinstatement of voluntary departure. The BIA concluded that the motion to reopen was untimely and rejected Harchenko's argument that a final order of deportation did not exist until the period of voluntary departure had expired. Harchenko had argued that the period of voluntary departure was tolled while he pursued an appeal of the BIA's decision affirming the denial of his application for asylum, but the BIA noted that the regulatory deadline for the filing of a motion to reopen runs from the date the IJ enters an order of deportation, and not from the date the voluntary departure period expires. In the alternative, Harchenko had argued that the BIA should exercise its *sua sponte* authority to reopen the proceedings

due to exceptional circumstances, but the BIA concluded that Harchenko's desire to seek an adjustment of status was not an exceptional situation warranting reopening. Harchenko also requested reopening on the basis of changed circumstances arising in the Ukraine, but the BIA found that he had not demonstrated such a "reasonable likelihood of success on the merits so as to make it worthwhile to develop the issues further at a full evidentiary hearing." Finally, the BIA denied Harchenko's request that it reinstate the period of voluntary departure, finding that it lacked the authority to do so because it was denying his motion to reopen. He now appeals from the order denying his motion to reopen and request for voluntary departure.

## II.

This court's jurisdiction to review the BIA's denial of a motion to reopen deportation proceedings was altered by adoption of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009. Prior to 1996, parties who wished to appeal any decision of the BIA filed a petition for review in the court of appeals for the circuit in which the administrative proceedings had been held. INA § 106(a) (formerly codified at 8 U.S.C. § 1105(a)). Section 106 was repealed by the IIRIRA and replaced with a new judicial review provision codified at 8 U.S.C. § 1252, but the repeal applies only to immigration proceedings begun after April 1, 1997. IIRIRA §§ 306(c), 309(a) & (c). The IIRIRA specifically provides for the application of transitional rules in cases in which deportation proceedings were pending before April 1, 1997, and a final deportation order was filed after October 30, 1996. IIRIRA § 309(c)(4). Because the BIA issued its decision on July 31, 2002, and petitioners were placed in proceedings before April 1, 1997, this case is governed by former § 106 of the INA, as amended by the IIRIRA's transitional rules.

## III.

Although Harchenko asserts eight issues in his brief,[1] he is in essence arguing just two points: (1) the BIA abused its discretion in denying his motion to reopen, and (2) if this court affirms the denial of his motion to reopen, it should nevertheless reinstate his earlier grant of voluntary departure.

### A.  Motion to Reopen

Harchenko first challenges the BIA's denial of his motion to reopen. He argues that the BIA erred in concluding that his motion to reopen was untimely, in deciding that he had failed to demonstrate changed country conditions in the Ukraine, in declining to exercise its *sua sponte* authority to reopen proceedings, and in finding that it lacked the authority to reinstate voluntary departure. This court reviews the BIA's denial of a motion to reopen for an abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323-24 (1992). Legal issues are reviewed *de novo*. *See Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998).

Under the rules in effect at the time the Harchenkos filed their asylum petition, a motion to reopen in any case previously the subject of a final decision by the BIA had to be filed no later than 90 days after the date of the BIA's decision.

---

[1]The government argues that this court should dismiss petitioners' brief for failure to cite the administrative record in accordance with Federal Rule of Appellate Procedure 28(a)(9)(A). Although petitioners' brief is in fact bereft of citations to the administrative record, the government cites no authority supporting its argument that this court should dismiss petitioners' appeal on that basis. Many of the arguments asserted by petitioners, with the exception of their argument for changed country conditions in the Ukraine, are legal, and not factual in nature. Hence, the lack of citations to the administrative record is not necessarily fatal to their arguments on appeal. We caution parties, however, that the court does not condone failures to comply with this rule. Such failures unnecessarily complicate review of the materials included in the Joint Appendix.

*See* 8 C.F.R. § 3.2(c)(2). However, the 90-day filing deadline does not apply to motions to reopen (1) filed by aliens who are deported *in absentia*; (2) filed by aliens seeking asylum or withholding of deportation based on changed country circumstances; (3) jointly filed by the alien and the INS; and (4) filed by the INS where the basis of the motion is fraud in the original proceeding or a crime that would support termination of asylum. 8 C.F.R. § 3.2(c)(3)(i-iv). Because they filed their motion to reopen well after the BIA's May 2000 decision, the Harchenkos asked the INS to join in their motion, but the INS declined on the grounds that the Harchenkos were statutorily ineligible to seek an adjustment of status until after June 22, 2005, due to their failure to voluntarily depart within 30 days of the final order of deportation. Before the BIA on their motion to reopen, the Harchenkos argued that their voluntary departure period was tolled until 30 days after this court issued its mandate in *Harchenko I* and that their motion to reopen was therefore timely. The BIA dismissed their argument, noting that the regulatory deadline for the filing of a motion to reopen runs from the date of the entry of the order of deportation, and not from the date that the period of voluntary departure expires. The BIA did not err in reaching this conclusion. *See Matter of Goolcharan*, 23 I. & N. Dec. 5 (BIA 2001). This court has previously noted that the time for filing a motion to reopen can be equitably tolled, *see Miculi v. Ashcroft*, No. 03-3276, 2004 WL 886956, at *1 (6th Cir. Apr. 23, 2004) (citing *Iavorski v. INS*, 232 F.3d 124, 127 (2d Cir. 2000)), but the Harchenkos offer no explanation for their failure to file their motion to reopen within the 90-day deadline established by 8 C.F.R. § 3.2(c)(2). Indeed, the Harchenkos do not challenge the BIA's determination that their motion to reopen was untimely.

Instead, the Harchenkos argue that this court should reopen their proceedings based on changed human rights conditions in the Ukraine. Under 8 C.F.R. § 3.2(c)(3)(ii), there is no time limitation for filing a motion to reopen to reapply for asylum or withholding of deportation based on changed

circumstances arising in the country of nationality if the evidence of such conditions is material, was not available, and could not have been discovered or presented at the previous hearing. The BIA determined this exception was not applicable to Harchenko's motion to reopen because Harchenko had not established the existence of materially changed conditions in the Ukraine. The BIA did not abuse its discretion in doing so. The party filing a motion to reopen bears a heavy burden. *See Doherty*, 502 U.S. at 323. As the Supreme Court has noted, "[g]ranting such motions too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case." *INS v. Wang*, 450 U.S. 139, 143 n.5 (1981) (quotation omitted). As evidence of changed human rights conditions in the Ukraine, Harchenko offers a long list of newspaper articles and references to the 2001 State Department Country Reports. He fails to explain how these developments would affect him if he is returned to the Ukraine.

Alternatively, Harchenko requests that this court take judicial notice of changed conditions in the Ukraine. As we have previously noted, an alien filing a motion to reopen based on changed country conditions "cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution." *Dokic v. INS*, No. 92-3592, 1993 WL 265166, *5 (6th Cir. July 15, 1993) (citing *Blanco-Comarribas v. INS*, 830 F.2d 1039, 1041-42 (9th Cir. 1987)). "The feared persecution must relate to the alien individually, not to the population generally." *Id.* Even if this court were to take judicial notice of changed human rights conditions in the Ukraine, the articles and reports offered by Harchenko fail to demonstrate the "individualized" fear of persecution required for asylum. Therefore, the BIA did not abuse its discretion when it concluded that Harchenko had failed to show materially changed conditions in the Ukraine such that his failure to file a timely motion to reopen could be excused.

Harchenko also contends that the BIA abused its discretion by declining to exercise its *sua sponte* authority to reopen proceedings under 8 C.F.R. § 3.2(a). The BIA noted that its discretionary power to reopen under § 3.2(a) is limited to "exceptional situations" and concluded that Harchenko's desire to seek an adjustment of status was not exceptional. The government contends that this court lacks jurisdiction to find that the BIA abused its discretion by failing to exercise its discretionary authority to reopen Harchenko's proceedings. We agree. The decision whether to invoke *sua sponte* authority is committed to the unfettered discretion of the BIA. *See* 8 C.F.R. § 3.2(a). "Therefore, the very nature of the claim renders it not subject to judicial review." *Luis v. INS*, 196 F.3d 36, 40 (1st Cir. 1999). *See also Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 474 (3d Cir. 2003); *Ekimian v. INS*, 303 F.3d 1153, 1154 (9th Cir. 2002); *Anin v. Reno*, 188 F.3d 1273, 1279 (11th Cir. 1999).

As other courts have noted, the discretion permitted by § 3.2(a) is "so wide that even if the party moving has made out a prima facie case for relief, the BIA can deny a motion to reopen a deportation order. No language in the provision requires the BIA to reopen a deportation proceeding under any set of particular circumstances. Instead, the provision merely provides the BIA the discretion to reopen immigration proceedings as it sees fit." *Anin*, 188 F.3d at 1279 (citations and quotation omitted). This reasoning is based on the Supreme Court's decision in *Heckler v. Chaney*, 470 U.S. 821, 830 (1985), in which the court held that "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Section 3.2(a) provides no standard by which to judge the agency's exercise of discretion. It allows the BIA to reopen proceedings in exceptional situations; it does not require the BIA to do so. As such, this court is without jurisdiction to review the BIA's decision declining to exercise its discretion to reopen or reconsider Harchenko's case.

Finally, Harchenko argues that the BIA erred when it concluded that it lacked the authority to reinstate his period of voluntary departure. This court reviews the BIA's refusal to reinstate voluntary departure under an abuse of discretion standard. *Yousif v. INS*, 794 F.2d 236, 244 (6th Cir. 1986). Voluntary departure is a form of discretionary relief that allows an alien to leave without stigma or adverse consequences of deportation. *See Contreras-Aragon v. INS*, 852 F.2d 1088, 1090 (9th Cir. 1988) (en banc). Under 8 U.S.C. §§ 1254(e)(1) and 1252(b), the Attorney General has sole discretion to permit an alien under deportation proceedings to depart voluntarily. By regulation, this authority is delegated to the INS district director, and, in limited circumstances, to immigration judges and to the BIA:

Authority to reinstate or extend the time within which to depart voluntarily specified initially by an immigration judge or the Board is within the sole jurisdiction of the district director, except that an immigration judge or the Board may reinstate voluntary departure in a deportation proceeding that *has been reopened* for a purpose other than solely making an application for voluntary departure.

8 C.F.R. § 1240.57 (emphasis added). As is clear from the above language, the BIA's authority to reinstate voluntary departure is dependent on the reopening of a proceeding for a purpose other than solely making an application for voluntary departure. In this case, the BIA denied Harchenko's motion to reopen. Therefore, it lacked the authority to reinstate voluntary departure and clearly did not abuse its discretion in denying this request.

**B.  This Court's Authority to Reinstate Voluntary Departure**

Harchenko alternatively asks this court to reinstate voluntary departure. He argues that we are empowered to do so in his case because the INS and the BIA both declined to

extend or reinstate voluntary departure in order to punish him for seeking access to this court.

This circuit has never before addressed the circumstances under which we may reinstate voluntary departure in cases that are pre-IIRIRA and governed by the transitional rules. Before adoption of the IIRIRA, the courts of appeals were divided on the issue of whether and under what circumstances they had the authority to reinstate voluntary departure.[2] The Ninth Circuit held that once voluntary departure was granted by the BIA, the privilege "remain[ed] in effect throughout the period of [judicial] review and for whatever additional period the [Board] afforded the alien in the order under review." *Contreras-Aragon*, 852 F.2d at 1092.[3] The First and Fourth Circuits took a more moderate position, retaining some authority over reinstatement or extension of voluntary departure while at the same time acknowledging that "the decision to reinstate or extend voluntary departures should usually be left to the discretion of the District Director, who is better suited to consider the factual prerequisites . . . ." *Ramsay v. INS*, 14 F.3d 206, 213 (4th Cir. 1994); *see also Umanzor-Alvarado v. INS*, 896 F.2d 14, 16 (1st Cir. 1990). These courts were concerned that under the Ninth Circuit's original approach, "a court might reinstate voluntary departure even though, in the interim period between the BIA's and court of appeals' decisions, the alien may have committed acts which would preclude him from eligibility for voluntary departure . . . ." *Ramsay*, 14 F.3d at 213. They agreed that courts of appeals have the authority to reinstate voluntary departure, but only when "(1) the INS is wielding

---

[2]It is clear that under the IIRIRA this court has no authority to review discretionary grants and denials of voluntary departure. 8 U.S.C. § 1229c(f) ("No court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure.").

[3]In *Zazueta-Carrillo v. Ashcroft*, 322 F.3d 1166, 1172-74 (9th Cir. 2003), the Ninth Circuit held that in light of the new provisions in the IIRIRA, *Contreras-Aragon* is no longer good law.

its discretion to withhold voluntary departure to deter applicants from seeking judicial review of BIA decisions, *or* (2) the [INS] does *not* suggest it will present the district director with any other reason for refusing the reinstatement." *Id.* (quotations omitted) (emphasis and alteration in original). By contrast, four circuits held, prior to the IIRIRA, that the statutory and regulatory language vesting authority to reinstate voluntary departure solely within the discretion of the Attorney General deprived federal courts of jurisdiction to reinstate the voluntary departure period. *See Nkacoang v. INS*, 83 F.3d 353, 355 (11th Cir. 1996); *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994); *Alsheweikh v. INS*, 990 F.2d 1025, 1027 (8th Cir. 1993); *Kaczmarczyk v. INS*, 933 F.2d 588, 598 (7th Cir. 1991). These circuits take the better approach.

Two primary concerns motivated courts that concluded they had the authority to reinstate voluntary departure pre-IIRIRA: (1) access to appellate review, and (2) judicial and administrative economy. *Castaneda*, 23 F.3d at 1581. These courts were concerned that, "because the usual thirty-day departure period permitted by the Board obviously cannot cover the time expended by a petition for review, voluntary departure is, in effect, conditioned on a waiver of judicial review with respect to the underlying deportation order." *Id.* In short, they saw the legislative and regulatory scheme as presenting aliens with a difficult choice: either elect to depart voluntarily and abandon any opportunity to overturn the deportation order, or choose to challenge the order and thereby forgo the benefits of voluntary departure. *Ramsay*, 14 F.3d at 211-12. However, as the court in *Castaneda* noted, a alien ordered deported "does not *lose* something when offered the additional opportunity to depart voluntarily. On the contrary, he retains precisely the same right to judicial review he would otherwise have had; it is only that his alternative to continued litigation has been made more attractive." 23 F.3d at 1582. Furthermore, the choice is not as dire as the First and Fourth Circuits predict. For example, in this case, Harchenko could have requested an extension of the

voluntary departure period from the district director, but he failed to do so. He was placed on notice of this option and of the consequences for failing to do so in both the IJ's and the BIA's initial decisions denying his request for asylum. Having failed to follow this procedure, Harchenko should not now be allowed to obtain relief he was offered earlier but declined to accept.

The other rationale offered by courts that have assumed the authority to reinstate voluntary departure is a concern for judicial economy, but this concern is similarly misplaced. In *Umanzor-Alvarado*, the First Circuit noted that if "the government does not suggest it will present the district director with any other reason for refusing reinstatement[,] . . . to require the petitioner to [then] apply to the district director to pass upon the matter would be pointless, for the director could not lawfully refuse reinstatement." 896 F.2d at 16. This reasoning "reflects both misplacement of the burden of persuasion and application of the wrong standard for the district director's decision." *Castaneda*, 23 F.3d at 1582. The district director has discretion to grant voluntary departure. It is not legally mandated. "[E]ven if the alien has not done anything to render [himself] legally ineligible for reinstatement or extension of voluntary departure, the district director always retains discretion to grant or deny the privilege." *Id.*

Finally, it is worth noting the circumstances of Harchenko's appeal in this case. This is not a situation where an alien is appealing the initial denial of his asylum application and asking this court to reinstate the grant of voluntary departure in the event that it decides to affirm the BIA. Nor is it a case where a petitioner has filed a motion seeking to stay voluntary departure pending adjudication of his initial appeal. *See Nwakanma v. Ashcroft*, 352 F.3d 325, 327-28 (6th Cir. 2003). In this case, Harchenko filed an untimely motion to reopen and alternatively requested reinstatement of his earlier grant of voluntary departure. It does not appear that he requested this form of relief in his initial appeal to this court. Instead,

he chose to file an untimely motion to reopen. Harchenko has cited no authority for the proposition that this court may reinstate his period of voluntary departure in the absence of a timely-filed motion to reopen. If the BIA lacks the authority to reinstate voluntary departure when the proceedings have not been reopened, then surely this court does as well.

## IV.

For the foregoing reasons, the petition for review of the decision of the BIA is denied.