Not Recommended for Full-Text Publication
File Name: 06a0839n.06
Filed: November 15, 2006

No. 05-4051

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NERITAN QERAXHIU,

             Petitioner,                                 On Petition for Review
                                                       Of an Order of the Board
v.                                                 Of Immigration Appeals

ALBERTO GONZALES,
Attorney General,

             Respondent.
_____/

Before: BOGGS, Chief Judge, BATCHELDER, Circuit Judge, and BELL, District Judge.[*]

**PER CURIAM.** Petitioner Neritan Qeraxhiu seeks review of a final order issued by the Board of Immigration Appeals ("Board" or "BIA") on August 3, 2005, which denied Qeraxhiu's motion to reopen his immigration proceedings. For the reasons that follow, the petition for review is denied.[1]

---

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

[1]Simultaneously with the filing of the instant petition for review, Qeraxhiu filed a motion for stay of removal. The court denied the motion for stay on September 23, 2005. Two days before oral argument in the instant matter, Qeraxhiu filed a second emergency motion for stay of removal. For the reasons set forth in the court's September 23, 2005 order, and in light of the court's disposition of the underlying petition, Qeraxhiu's second motion for stay is denied.

**I.**

Petitioner Qeraxhiu is a citizen of Albania who entered the United States without inspection on October 3, 1996, at Detroit, Michigan. On April 11, 1997, Qeraxhiu filed for asylum. He was placed into deportation proceedings and issued a Notice to Appear on June 17, 1997.

In his petition for asylum, Qeraxhiu alleged that the Democratic Party, which was then in power in Albania, had imprisoned and abused him for his political speech during the three years preceding his immigration. He also alleged that his family historically had been persecuted under the Communist regime in power until 1992. After a full hearing on the merits of the case, the Immigration Judge entered an oral decision denying Qeraxhiu's applications for asylum and withholding of deportation and voluntary departure, and ordering Qeraxhiu to be deported to Albania. In denying the claim for asylum, the Immigration Judge found that Qeraxhiu was not credible and had not demonstrated past persecution or a well-founded fear of future persecution from Albania. The Immigration Judge also concluded that Qeraxhiu was not statutorily eligible for voluntary departure. The Immigration Judge therefore ordered that Qeraxhiu be removed to Albania.

Qeraxhiu appealed the decision of the Immigration Judge to the BIA. On March 24, 2003, the Board affirmed without opinion the Immigration Judge's order. Qeraxhiu did not file a timely petition for review of the Board's decision.

On April 19, 2005, Qeraxhiu filed a motion with the BIA to reopen removal proceedings and for a stay of removal on the basis of changed country conditions, attaching

evidence that ostensibly was previously unavailable. That evidence included numerous newspaper articles, book extracts, reports from the United States Department of State and Amnesty International, as well as affidavits from family members granted asylum prior to Qeraxhiu's BIA decision. Through the newly submitted evidence, Qeraxhiu attempted to show that the then-current Socialist government was engaged in propaganda aimed at restoring the reputation of the former Communist regime that had persecuted his family, and that the Socialist government had a record of mistreating peaceful protestors. He claimed that the new evidence entitled him to a reopening of his claim for asylum or for relief under Article III of the Convention Against Torture.

The BIA denied Qeraxhiu's motion to reopen by way of a decision issued August 3, 2005. The Board recited the standards for reopening a case based on changed circumstances and expressly found that Qeraxhiu did not demonstrate any exception excusing his failure to file the motion to reopen within 90 days of the Board's March 24, 2003 denial of his application for asylum. The BIA also found that the background evidence submitted by Qeraxhiu did not support the conclusion that conditions in Albania had changed in regard to his claim that he faced an individualized threat of persecution. Finally, the BIA found that the affidavits submitted by relatives did not meet the requirement of having previously been unavailable, since the affiants in question arrived in the country well before the 2003 decision.

Qeraxhiu filed the instant petition for review.

**II.**

This court has exclusive jurisdiction to review final orders of removal under Section 242(a)(1) of the Immigration and Nationality Act, as amended by the Real ID Act of 2005, 8 U.S.C. § 1252(a)(1)(2005). The court, however, may exercise its jurisdiction only over those matters raised in a petition for review that has been timely filed within 30 days of the final order of removal. *See Prekaj v. INS*, 384 F.3d 265, 267-68 (6th Cir. 2004).

An order of deportation becomes final when issued, irrespective of whether a motion to reopen or reconsider subsequently is filed. *See Stone v. INS*, 514 U.S. 386, 395 (1995) (holding that the filing of a motion to reopen or reconsider does not affect the finality of an underlying deportation order). As a consequence, a party who seeks reopening or reconsideration must file separate petitions for review within 30 days of each final order. *Id.* A party who fails to file a timely petition for review of an order waives appellate review of that order, as the statutory time for filing is both mandatory and jurisdictional. *Id.* at 405 (citing *Missouri v. Jenkins*, 495 U.S. 33, 45 (1990)).

In the instant case, Qeraxhiu did not file a timely petition for review of the Board's March 24, 2003 denial of his application for asylum and withholding of deportation. As a result, this court lacks jurisdiction to consider any issues raised by the Board's March 24, 2003 decision. The court's review in this matter, therefore, is limited to the Board's denial of the motion to reopen, issued August 3, 2005.

### III.

In his petition for review, Qeraxhiu argues that the Board abused its discretion in refusing to reopen his removal proceedings for two reasons. First, he contends that the BIA unreasonably and improperly concluded that the motion to reopen was untimely. Second, he argues that the BIA's decision denying the motion to reopen constituted both an abuse of discretion and a violation of due process by failing to provide an adequate statement of the reasons for the decision.

A.     Standards of Review

Under BIA regulations, a motion to reopen "shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005) (citing 8 C.F.R. § 1003.2(c)(1)); *see also Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006). Motions to reopen a removal proceeding are within the broad discretion of the BIA. *INS v. Doherty*, 502 U.S. 314, 323 (1992). Such motions, however, are "disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence." *Id.* This court may review the denial of a motion to reopen only for clear abuse of discretion. *Doherty*, 502 U.S. at 323; *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982). A reviewing court must possess a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Balani*, 669 F.2d at 1160. "'In determining whether the Board abused its discretion, this Court must decide whether the denial of [the]

motion to reopen . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Allabani*, 402 F.3d at 675 (quoting *Balani*, 669 F.2d at 1161). The scope of this court's review is limited to consideration of the administrative record and the decision of the Board. *Anssari-Gharachedaghy v. INS*, 246 F.3d 512, 513 (6th Cir. 2000).

Motions to reopen ordinarily must be filed within 90 days of the date of the final administrative decision in the proceeding sought to be reopened. 8 C.F.R. § 1003.2(c)(2). The 90-day period for filing a motion to reopen is subject to narrow exceptions: (1) where the BIA reopens the proceedings *sua sponte*; (2) where the parties agree to reopen the proceedings; (3) changed circumstances in the country of nationality of which there is new, material evidence that could not have been discovered or presented at the time of the original proceeding; and (4) certain *in absentia* decisions. *See* 8 C.F.R. § 1003.2(a), (c)(3).

While a motion to reopen should not be granted unless the petitioner makes a prima facie showing that the statutory requirements for relief have been met, the Board retains the discretion to deny the motion to reopen, even where a prima facie showing has been made. *Yousif v. INS*, 794 F.2d 236, 241 (6th Cir. 1986).

B.    Timeliness

As previously noted, a motion to reopen ordinarily must be filed within 90 days of the order denying asylum. 8 C.F.R. § 1003.2(c)(2). The Board's order affirming the decision of the Immigration Judge was issued March 24, 2003. Qeraxhiu filed his motion to reopen

more than two years later, on April 19, 2005. The motion therefore was untimely unless it

met one of the exception to the limitations period set forth in 8 C.F.R. § 1003.2(a) and (c)(3).

Qeraxhiu argues two exceptions to the statute of limitations. First, he contends that

the BIA abused its discretion in failing to reopen the case based on changed circumstances

within the country of nationality, pursuant to 8 C.F.R. § 1003.2(c)(2)(ii), which provides as

follows:

> (3) . . . The time and numerical limitations set forth in paragraph (c)(2) of this
> section shall not apply to a motion to reopen proceedings:
>
> . . .
>
> (ii) To apply or reapply for asylum or withholding of deportation based on
> changed circumstances arising in the country of nationality or in the country
> to which deportation has been ordered, if such evidence is material and was
> not available and could not have been discovered or presented at the previous
> hearing . . . .

*Id.*

Qeraxhiu argued that the election of the Socialist Party in Albania resulted in a change

in country conditions warranting reopening of the proceeding. He attached to his motion a

variety of supporting documents. Among those documents, he included newspaper reports

from January 2005, which discussed actions taken by the Socialist government to rehabilitate

the reputation of Enver Hoxha, the former Communist dictator of Albania. He also presented

newspaper articles from February 2004 about an incident in which the Socialist government

police allegedly detained and mistreated peaceful protestors and fired bullets over protesters'

heads. In addition, he included a copy of a February 24, 2004 State Department report on

Albania and the 2001 through 2004 reports of Amnesty International and the Organization

for Security and Cooperation in Europe, all relating to general country conditions, including

reports of the mistreatment of certain detainees in Albania. Finally, he included affidavits

from relatives and neighbors relating to his arrests under the Democratic Party. These

affidavits all relate to events that occurred before Qeraxhiu left Albania, and none were

directed to the proof of changed conditions since Qeraxhiu's departure.

The Board concluded that Qeraxhiu failed to demonstrate that the affidavits submitted

with his motion to reopen were unavailable at the time of the Board's initial denial, as

required by 8 C.F.R. § 1003.2(c)(2)(ii). Qeraxhiu argues that the affidavits of family and

neighbors were unavailable to him because of difficulties in communicating with persons in

Albania. Qeraxhiu's father, in particular, avers that he was not yet present in this country at

the time of his son's initial hearing. As the Board concluded, however, the affidavits should

have been available to Qeraxhiu before the Board's denial of his application for asylum. In

particular, Qeraxhiu's father, mother and brother were granted asylum in this country on

January 6, 2003, before the Board's denial, and the father's affidavit itself declares that he

arrived in this country in 1999. In addition, the information provided in the affidavits is not

material to the question of changed country circumstances occurring after the Board's

March 24, 2003 order. The Board's conclusion that the affidavits were neither previously

unavailable nor material is both reasonable and a sufficient ground for denying a motion to

reopen. *See Allabani*, 402 F.3d at 675 (citing *INS v. Abudu*, 485 U.S. 94, 107-08 (1988)).

Further, the remainder of the information supplied by Qeraxhiu in his motion to reopen addresses the situation existing in Albania under the rule of the Socialist Party, which took office only after his departure from the country. Qeraxhiu's original claim of asylum was based on actions taken against him by members of the Democratic Party, not the Socialist Party. While the new evidence supports the existence of certain generalized anti-democratic actions by the Socialist Party after it became the ruling party, Qeraxhiu failed to show any personal risk of persecution. *See Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (mere assertion of possible persecution is inadequate to support a changed condition; instead, a party must provide "specific information showing a real threat of individual persecution"); *see also Abay v. Ashcroft*, 368 F.3d 634 (6th Cir. 2004) *Perkovic v. INS*, 33 F.3d 615, 620-21 (6th Cir. 1994); *Kotasz v. INS*, 31 F.3d 847, 851-52 (9th Cir. 1994); 8 C.F.R. § 1208.13(b)(2)(iii)(A)-(B) (in order to demonstrate a well-founded fear of prosecution, an alien must show either that "[h]e would be singled out personally for persecution," or that "[h]e has a reasonable fear of persecution because of [his] membership in a group subject to a 'pattern or practice of persecution.'"). The Board's conclusion in this regard therefore is amply supported.

In the alternative, Qeraxhiu argues that the Board could and should have acted under 8 C.F.R. § 1003.2(a) to reopen the matter *sua sponte*, based on the exceptional circumstances presented in the case. In particular, he argues that his former attorney, who was subsequently disbarred, rendered ineffective assistance by failing to advise Qeraxhiu of the Board's March 24, 2003 decision, thereby preventing Qeraxhiu from filing a timely petition for

review in this court. He also asserts that, given his history of persecution in Albania, the grant of asylum to the remainder of his family, and the fact that he now has two minor children who are citizens of the United States, the Board should have reopened the proceeding on purely humanitarian grounds.

Although Qeraxhiu suggests that the Board's refusal to reopen the case *sua sponte* should be reviewed for abuse of discretion, this court has held that "[t]he decision whether to invoke *sua sponte* authority is committed to the unfettered discretion of the BIA" and is not subject to judicial review. *Harchenko*, 379 F.3d at 410-11 (citing *Luis v. INS*, 196 F.3d 36, 40 (1st Cir. 1999)); *see also Randhawa v. Gonzales*, No. 04-4006, 2006 WL 1623307, *1 (6th Cir. June 2, 2006). *Harchenko* affirmed the principle that "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 411 (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). We therefore lack jurisdiction to review the BIA's decision not to reopen the proceedings *sua sponte*.

Moreover, even if this court had jurisdiction to review the BIA's discretion under 8 C.F.R. § 1003.2(a) to decline to reopen a proceeding, the matter is not properly before this court. In his motion to reopen before the BIA, Qeraxhiu did not raise the issue of his counsel's ineffectiveness, and he did not request that the BIA exercise its authority to reopen under 8 C.F.R. § 1003.2(a). Exhaustion of administrative remedies is a jurisdictional prerequisite to this court's consideration of a challenge to a final order of deportation. *See Hasan v. Ashcroft*, 397 F.3d 417, 419 (6th Cir. 2005). "[I]n an appeal from an order of

removal, we have jurisdiction to review only those claims as to which the alien has exhausted his administrative remedies, that is, those claims 'properly presented to the BIA and considered on their merits.'" *Id.* (quoting *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004)); *see also Perkovic*, 33 F.3d at 619; 8 U.S.C. § 1252(d)(1). Because Qeraxhiu did not raise his claims of ineffective assistance of counsel or request exercise of the BIA's *sua sponte* authority to reopen under 8 C.F.R. § 1003(a), the issues are not exhausted and are not properly before this court on review.

In sum, Qeraxhiu failed to demonstrate any exception to the 90-day period of limitations for filing a motion to reopen. The Board therefore properly concluded that his motion to reopen was time-barred.

**IV.**

For the foregoing reasons, Qeraxhiu's petition for review of the BIA's August 3, 2005 order is **DENIED**. Qeraxhiu's motion for emergency stay of removal also is **DENIED**.