NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0475n.06

No. 08-3702

**FILED**
**Jul 09, 2009**
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| EDMOND BEDALLI, | ) | |
| LJUBICA BEDALLI, | ) | |
| JULJAN BEDALLI, and | ) | PETITION FOR REVIEW OF THE |
| ANA BEDALLI, | ) | BOARD OF IMMIGRATION APPEALS |
| | ) | |
| Petitioners, | ) | OPINION |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC H. HOLDER, JR., | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Before: MOORE and GILMAN, Circuit Judges; and PHILLIPS, District Judge.**[*]

**THOMAS W. PHILLIPS, District Judge.** Petitioner Edmond Bedalli, a native Albanian

and citizen of Montenegro,[1] seeks review of the order of the Board of Immigration Appeals ("BIA")

denying his motion to reopen asylum proceedings and additionally alludes to review of the denial

of his motion to reconsider the asylum proceedings. Petitioner initially applied for asylum and

alternatively for withholding of removal, which the immigration judge below denied and the Board

of Immigration Appeals ("BIA") affirmed without opinion. Over four years later, petitioner moved

---

[*]The Hon. Thomas W. Phillips, United States District Judge for the Eastern District of Tennessee, sitting by designation.

[1]Bedalli's wife Ljubica and children Juljan and Ana are included as petitioners. They are dependent on Edmond, however, and for simplicity's sake, references in the record and herein are solely to Edmond and the singular "petitioner."

to reopen these proceedings, which motion the BIA denied as untimely on May 7, 2008. Petitioner separately filed a motion to reconsider on June 3, 2008, which the BIA denied on January 15, 2009.

For the reasons set forth below, we **DENY** the petition for review.

## I. BACKGROUND

Petitioner and his family are ethnic Albanians who formerly lived in Montenegro, of the former Yugoslavia. Petitioner alleges that he and his extended family have suffered a "long history of persecution at the hands of the communists and subsequent socialist governments" because of their activity in anti-communist Albanian politics. After moving to Montenegro in the early 1990s, petitioner was placed in the military reserves. On or about May 4, 1999, he received a draft notice calling him to active duty, which petitioner ignored. Accordingly, on or about May 22, 1999, the military police arrived at his house to arrest him. Although petitioner initially complied voluntarily, he later escaped custody and went into hiding. After fleeing to Italy, petitioner entered the United States via Philadelphia in August 1999.

On March 3, 2000, petitioner applied for asylum, withholding of removal under the Immigration and Naturalization Act, and protection under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment. Petitioner claimed he would be incarcerated for evading military service and persecuted as an ethnic Albanian were he denied asylum and removed from the United States. His family having entered the United States in March 2000, all four family members were served with a Notice to Appear on or about January 31, 2001.

The immigration judge ("IJ") denied petitioner's application. First, the IJ held that petitioner had not met the standards for granting asylum, for which the applicant bears the burdens of proof and persuasion under 8 U.S.C. § 1158(b)(1)(B). Asylum may be granted if the applicant is determined to be a refugee. *Id.* § 1158(b)(1)(A). The IJ found that petitioner failed to meet this definition, having shown neither past persecution or a well-founded fear of future persecution, 8 C.F.R. § 208.13(b), as Slobodan Milosevic had fallen from power, there was general amnesty for military service evaders in both Serbia and Montenegro, and in any event it was reasonable to expect petitioner to return to his house in Montenegro, where he would be safe. Furthermore, petitioner had not established that there was a pattern or practice of persecuting Albanians in Montenegro. For these same reasons, the IJ also denied petitioner's application for withholding of removal under the Immigration and Naturalization Act. *See id.* § 208.16(b) (standards for withholding of removal). The IJ likewise denied petitioner's application for protection under the UN Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment, as petitioner had not shown any evidence of past torture or of gross, flagrant, or mass violations of human rights and, in any event, there was evidence that petitioner could relocate elsewhere and avoid such persecution. Finally, the IJ denied petitioner's application for voluntary departure (applicable to Edmond only, as the remaining family members were not statutorily eligible for voluntary departure) and ordered the removal of petitioner and his family members. On October 29, 2003, the BIA affirmed this decision without opinion, and on February 8, 2005, this court denied Bedalli's petition for review. *Bedalli v. Gonzales*, No. 03-4524.

On February 22, 2008, petitioner filed a motion to reopen with the BIA. Although motions to reopen must generally be filed within ninety days of the date on which the final administrative

-3-

decision was rendered, this time limitation does not apply, inter alia, "to a motion to reopen proceedings ... [t]o apply or reapply for asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii). Petitioner argued that circumstances changed in Montenegro following its declaration of independence from the country then known as Serbia and Montenegro, the former Yugoslavia, in 2006, and Kosovo's declaration of independence from Serbia in 2008. In support of his motion, petitioner filed, among other things, a 1995 Response to Information Request by the INS Resource Information Center in Washington, D.C., contending that ethnic Albanians were at risk if conscripted into the Serbian army or if they avoided conscription. Petitioner further argued that the Montenegrin government was persecuting ethnic Albanians, three of whom are naturalized U.S. citizens, by falsely arresting them as terrorists so that it could subject them to detention and torture. Finally, petitioner cited the demonstrations and riots against Albanians and the United States following Kosovo's declaration of independence on February 17, 2008 and the United States's support thereof as evidence that he would be persecuted upon his return.

On May 7, 2008, the BIA denied the motion to reopen as untimely. It found that petitioner and his family had "failed to demonstrate how these circumstances would objectively affect their claim of persecution or torture." Because petitioner had not adequately shown how the circumstances cited would affect him, the BIA found that the evidence was "inadequately material" and therefore petitioner was not subject to the exception to the ninety-day deadline. Petitioner then filed a motion to reconsider on June 3, 2008, which was denied on January 15, 2009.

The petition for review, filed on June 6, 2008, cites only the May 7, 2008 decision of the BIA denying Bedalli's motion to reopen. Petitioner now argues, albeit in cursory references without elaboration, that the motion to reconsider should have been granted. The Attorney General ("AG") opposes the petition, arguing that petitioner has not shown changed circumstances; that even if he had, they are not material; and that petitioner has failed to meet his burden of showing that the information was not previously available, particularly with regard to the 1995 report. The AG further argues that the BIA's denial of petitioner's motion to reconsider is not properly before this court for review.

## II. ANALYSIS

### A.    Standard of review

"The denial of a motion to reopen or reconsider a removal order is reviewed for an abuse of discretion." *Huang v. Mukasey*, 523 F.3d 640, 654 (6th Cir. 2008) (quoting *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003)). "This Court will find an abuse of discretion if the denial of the motion to reopen [or reconsider] 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.' " *Bi Feng Liu v. Holder*, 560 F.3d 485, 490 (6th Cir. 2009) (quoting *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)).

### B.    Motion to Reopen

A motion to reopen must generally be filed within ninety days after the issuance of the final administrative decision. 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R § 1003.2(c)(2). There are few exceptions to this deadline; applicable to the instant case is an exception for a reapplication "for

asylum or withholding of deportation based on changed circumstances arising in the country of nationality or in the country to which deportation has been ordered, if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." 8 C.F.R. § 1003.2(c)(3)(ii); *see also* 8 U.S.C. § 1229(c)(7)(C)(ii). "In order to justify the reopening of proceedings based on changed country conditions, the movant 'cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution.' " *Al Roumy v. Mukasey*, 290 F. App'x 856, 859 (6th Cir. 2008) (quoting *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004)).

In support of his motion to reopen, petitioner submitted a 1995 report regarding the risks ethnic Albanians face if conscripted into the army or if they avoid being conscripted; a 2007 report from the Office of the Coordinator for Counterterrorism of the U.S. Embassy regarding terrorism and counterterrorism in Montenegro and specifically discussing the September 9, 2007 arrest of fourteen ethnic Albanians; an Amnesty International report on Montenegro, likewise discussing the events of September 9, 2007; a report from the Albanian American Civic League entitled, "The Albanian American Civic Condemns the Illegal Arrest and Torture of 14 Albanians, Three of Them U.S. Citizens, in Montenegro: *Calls on the U.S. Government to Prevent a Cover-Up*"; an article from the Detroit Free Press reporting on two of the three U.S. citizens arrested, who were Michigan residents; a news article by the Oakland Press about the third U.S. citizen arrested and his family's struggle for his release; and the affidavit of Prenik Camaj, a family friend and expert on the former Yugoslavia.

The BIA found these submissions were insufficiently material to petitioner's claim and denied petitioner's motion on that basis, not specifically addressing whether petitioner had demonstrated that circumstances had changed. The BIA held:

The respondents now submit evidence that various United States citizens have been arrested as terrorists in Montenegro. However, the respondents have failed to demonstrate how these circumstances would objectively affect their claim of persecution or torture. While the government of Montenegro might be aware of the respondents' return to the country, we do not find that the respondents have demonstrated that such conditions have reasonably created a likelihood that they would be persecuted or tortured, and we, therefore, find that the evidence submitted in the respondents' motion is inadequately material to their claim.

As an initial matter, the first exhibit, a 1995 report regarding the risks ethnic Albanians face if they, like petitioner, avoid conscription in the army, was clearly available at the time of petitioner's underlying application for asylum and withholding of removal and is therefore not considered as evidence of changed circumstances. *See* 8 C.F.R. § 1003.2(c)(3)(ii) (ninety-day time limitation does not apply if evidence of changed circumstances is both material and "was not available and could not have been discovered or presented at the previous hearing"). While the BIA did not specifically exclude this evidence, neither did the BIA explicitly reference it in its opinion. The opinion instead focuses on the materiality of evidence of the September 9, 2007 arrests of fourteen ethnic Albanians, which primarily comprises the remainder of petitioner's submissions. This court will likewise focus its analysis on the remaining evidence, with the specific finding that the 1995 report should not be considered.

With regard to whether the BIA abused its discretion in finding that the remainder of the evidence was not material, the case of *Kalaj v. Mukasey,* 276 F. App'x 465 (6th Cir. 2008) (per curiam), is particularly instructive. The Kalajs were native Albanians seeking asylum or withholding of removal. In affirming the order of the BIA denying the Kalajs' motion to reopen, we found:

The Kalajs' proffered "evidence" falls woefully short of this standard. It consists of a random collection of Internet articles principally describing on-going political tension between the ruling Democrats and the opposition Socialists in Albania, along with two country reports (one from the U.S. State Department and a second from a

-7-

now-defunct human rights organization) describing both positive and negative developments in Albania's recent human rights record. There is nothing even remotely individualized in these documents, and we will not find that the BIA abused its discretion in refusing to reopen a case when presented with such equivocal and anecdotal evidence of changed country conditions. We have repeatedly rejected similar attempts by Albanian petitioners to reopen their asylum cases based on largely unsubstantiated allegations of worsening conditions in their country.

*Id.* at 467.

Similarly, in *Grishaj v. Gonzales*, petitioner was an ethnic Albanian from Kosovo. *Grishaj v. Gonzales*, 192 F. App'x 493, 494 (6th Cir. 2006). The court, inter alia, upheld the BIA's denial of his motion to reopen, which he had supported with an updated report on the status of political and human rights conditions in Kosovo, because the submitted documents "did not offer material evidence sufficient to change the original finding that Grishaj has no well-founded fear of future persecution." *Id.* at 498.

Likewise, in *Krcic v. Gonzales,* petitioners, ethnic Albanians and citizens of Montenegro, had moved to reopen their proceedings based in part on worsening conditions in Serbia and Montenegro. *Krcic. v. Gonzales*, 186 F. App'x 541, 541 (6th Cir. 2006) (per curiam). Petitioners substantiated their motion to reopen "principally [with] articles and press releases describing the 2003 assassination of Prime Minister Zoran Djindjic, which led to a 42 day state of emergency." *Id.* at 542. We upheld the BIA's denial of the motion to reopen, finding that "there [was] nothing in the record to connect that assassination to the Krcics or to rebut the finding of the Board that ... '[t]he Report does not indicate widespread actions against ethnic Albanians in Montenegro.'" *Id.* at 542-43 (quoting BIA opinion below). Accordingly, we did not find that the BIA had abused its discretion in denying the motion to reopen. *Id.* at 543.

These cases demonstrate a general pattern of upholding the BIA's denial of a motion to reopen where the petitioner had substantiated the untimely motion with generalized news articles and reports. In the instant case, the evidence submitted by petitioners is of a substantially similar nature, consisting primarily of news articles and other accounts of the September 9, 2007 arrest of fourteen[2] ethnic Albanians, three of whom are U.S. citizens, for alleged terrorist activities in Montenegro. Petitioner has argued that the cited grounds of terrorism for this arrest was merely a pretense to allow for the persecution and torture of these ethnic Albanians. He then extrapolates from this apparently isolated incident, arguing that it demonstrates "that Albanians returning to Montenegro[] from Albania or the United States run the risk of being arrested, tortured and thrown into jail." Accordingly, petitioner argues, he has proven that he has a well-founded fear of future persecution should he return to Montenegro.

Yet this is pure conjecture. Even assuming arguendo the illegality of these arrests, petitioner has shown nothing to connect this incident to his plight. *See Krcic*, 186 F. App'x at 542 ("[T[here is nothing in the record to connect that assassination to the Krcics ...."). Moreover, his allegation that ethnic Albanians are being persecuted and tortured on a widespread basis and he therefore is certain to be persecuted and tortured is without substantiation. Even if it were substantiated, "[t]he feared persecution must relate to the alien individually, not to the population generally." *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004) (quotation marks omitted).

The most individualized information petitioner offered the BIA was the affidavit of Prenik Camaj. Mr. Camaj elaborates on petitioner's family history and alleged history of persecution in Albania and Montenegro. This information, however, does not demonstrate any changed

---

[2]The Amnesty International report submitted by petitioner states that seventeen individuals were arrested.

circumstances since petitioner's initial application for asylum, and insofar as it discusses the events of September 9, 2007 and the ongoing persecution of ethnic Albanians, again, petitioner has failed to show how such incidents are material to his individual case.

In sum, the evidence proffered by petitioner shows no "reasonably specific information showing a real threat of individual persecution." *Harchenko*, 379 F.3d at 410 (quotation omitted). Accordingly, the BIA offered a rational explanation for denying petitioner's motion to reopen, namely, that even assuming he had proven changed circumstances, he had not proven the materiality of those circumstances to his individual case. The BIA did not abuse its discretion, and therefore we affirm the decision of the BIA to deny petitioner's motion to reopen.

**B.      Motion to Reconsider**

Petitioner references his motion to reconsider in his brief on appeal, including it as an issue in his Statement of the Issues and arguing in his Conclusion that the BIA "erred in not [r]eopening Petitioner's case as the factual basis for Petitioner's Motion to Reopen and Motion for Reconsideration demonstrated the persecution and clear prejudice Petitioner suffered." Yet because he did not include his motion to reconsider in his petition for review, there is somewhat of an ambiguity as to whether petitioner is attempting to petition for review thereof. To the extent he is, we find that this court does not have jurisdiction to consider the BIA's denial of petitioner's motion to reconsider.

8 U.S.C. § 1252(a)(5) provides that "[n]otwithstanding any other provision of law ... a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." A petition for review must be filed within thirty days after the date

-10-

of a final order of removal. *Id.* § 1252(b)(1). A separate petition must be filed for each order, however, or the petitioner waives review thereof. More specifically,

> An order of deportation becomes final when issued, irrespective of whether a motion to reopen or reconsider subsequently is filed. *See Stone v. INS*, 514 U.S. 386, 395 (1995) (holding that the filing of a motion to reopen or reconsider does not affect the finality of an underlying deportation order). As a consequence, **a party who seeks reopening or reconsideration must file separate petitions for review within 30 days of each final order.** *Id.* A party who fails to file a timely petition for review of an order waives appellate review of that order, as the statutory time for filing is both mandatory and jurisdictional. *Id.* at 405 (citing *Missouri v. Jenkins*, 495 U.S. 33, 45 (1990)).

*Qeraxhiu v. Gonzales*, 206 F. App'x 476, 479 (6th Cir. 2006) (emphasis added) (internal citations to other case reporters removed).

In the instant case, on June 3, 2008, petitioner filed a motion to reconsider. His petition for review, filed on June 6, 2008, identifies only an appeal of the BIA's May 7, 2008 decision dismissing his motion to reopen as untimely. Moreover, petitioner has not filed a timely petition for review of the BIA's order denying his motion to reconsider. Accordingly, there is no means of review of this order. 8 U.S.C. § 1252(a)(5) ("Notwithstanding any other provision of law ... a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter ...."); *id.* § 1252(b)(1) ("The petition for review must be filed not later than 30 days after the date of the final order of removal."); *Qeraxhiu*, 206 F. App'x at 479; *see also, e.g.*, *Mu Ju Li v. Mukasey*, 515 F.3d 575, 578 (6th Cir. 2008) (discussing *Stone v. INS* and noting that "[a]ccording to the [Supreme] Court, the statute's consolidation provision [8 U.S.C. § 1252(b)(6)] contemplates that if the BIA issues an order denying the motion to reconsider, it is a separate order requiring a separate petition for review.").

### III. CONCLUSION

Because petitioner has not shown that the denial of his motion to reopen was made without a rational explanation, inexplicably departed from established policies, or rested on another impermissible basis, we **DENY** his petition for review. In addition, since petitioner failed to petition for review of the order denying his motion to reconsider, this court does not have jurisdiction over the review thereof.