**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 19a0507n.06

Case No. 18-4248

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

Oct 10, 2019

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| OUMAR DJIBI THIAM, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| WILLIAM P. BARR, Attorney General, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Respondent. | ) | |
| | ) | |

BEFORE: SUTTON, KETHLEDGE, and STRANCH, Circuit Judges.

SUTTON, Circuit Judge. Oumar Djibi Thiam was denied asylum in the United States in 2012. Six years later, he asked the Board of Immigration Appeals to reopen his case. The Board declined, and we deny Thiam's petition for review.

Born in Mauritania, Thiam illegally entered the United States in 2001 using fake documents. He applied for asylum and related relief, and the government initiated removal proceedings against him. As a Black Mauritanian of African rather than Arab descent, Thiam feared race-based persecution if he returned to his country. An immigration judge denied his application, concluding that he lacked credibility given material inconsistencies between his written application and testimony. The Board affirmed, and Thiam did not petition this court for review.

Six years later, Thiam tried to reopen his case. That's usually too late. Motions to reopen must be filed within 90 days of the final removal order. *See* 8 U.S.C. § 1229a(c)(7)(C). But exceptions exist. The time bar does not apply, for example, to noncitizens who seek to reopen their cases based on previously unavailable and material evidence of "changed country conditions." *Id.* § 1229a(c)(7)(C)(ii). Thiam sought refuge in this exception on the ground that conditions for Black Mauritanians had worsened. The Board disagreed. It found that, while this ethnic group "continue[d] to experience governmental discrimination," that was just as true when the Board denied Thiam's first asylum application, and nothing since then had made conditions materially worse. AR 4. The Board also found that Thiam was not eligible for relief under the Convention Against Torture, meaning that this claim could not serve as a basis to reopen his case either.

Thiam petitioned this court for review.

Only if the Board abused its discretion may we grant a petition to reopen. *INS v. Abudu*, 485 U.S. 94, 105 (1988); *Gafurova v. Whitaker*, 911 F.3d 321, 325 (6th Cir. 2018). That requires us to find that the Board's decision lacked a "rational explanation," "inexplicably departed from established policies," or "rested on an impermissible basis such as invidious discrimination[.]" *Gafurova*, 911 F.3d at 325. It is not enough by itself that we "would have decided the case differently." *Id.*

*Asylum claim.* Asylum applicants who wish to avoid the 90-day bar for motions to reopen, to repeat, must introduce previously unavailable and "material" evidence of "changed country conditions." 8 U.S.C. § 1229a(c)(7)(C)(ii). The new evidence must make a difference to the asylum claim to be material. *Gafurova*, 911 F.3d at 326; *see also Moosa v. Holder*, 644 F.3d 380, 385 (7th Cir. 2011). To that end, the applicant must show with "reasonabl[e] specific[ity]" how

the changed country conditions would affect him if he returned. *Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir. 2004).

Thiam claims that the Mauritanian government "stripped [him] and thousands of other Black Mauritanians" of citizenship by excluding them from the 2011 census, making him "stateless." Pet'r Br. 11. The Board fairly concluded that the evidence does not support his claim.

State Department country reports "are generally the best source of information on conditions in foreign nations[.]" *Sterkaj v. Gonzales*, 439 F.3d 273, 276 (6th Cir. 2006) (quotation omitted). But the State Department's 2017 Human Rights Report on Mauritania, Thiam's key piece of evidence, does not advance the ball. The report says that Mauritanian law confers citizenship on those, like Thiam, who were born in the country, and that the Mauritanian Constitution provides a right of repatriation that the government "generally respect[s]." AR 146–47. But the report doesn't say anything about the 2011 census, let alone anything about the alleged citizenship stripping that took place during it. That omission is particularly glaring given that the same report has a section about "stateless persons" that discusses a different population of refugees whom the government rendered stateless. AR 147. If the 2011 census had caused a "material" change in conditions in Mauritania for Black Mauritanians, one could fairly expect the State Department to mention it, particularly since it identifies an equivalent problem for another group.

Thiam claims that two declarations from experts on Mauritania fill this gap. But the declarations mainly discuss general problems in the country without explaining how things have changed since Thiam's asylum case ended. The one exception is that the declarations have a few sentences about the 2011 census that offer modest support for Thiam's claims. The relevant statements, however, are short, conclusory, and uncorroborated. One of them cites only a single news article, which merely speculates that citizenship stripping "is an entirely possible outcome"

of the census. AR 43. Sebastian Kohn, *Fear and Statelessness in Mauritania*, Open Society Found. (Oct. 3, 2011), https://www.justiceinitiative.org/voices/fear-and-statelessness-mauritania. The other declaration doesn't cite anything at all to support its statement about the 2011 census. The Board, for these reasons, gave the declarations "limited weight." AR 5; *see Gafurova*, 911 F.3d at 325. And the Board, for those reasons, had a "rational explanation" for rejecting the motion to reopen. *Zhang v. Mukasey*, 543 F.3d 851, 853–54 (6th Cir. 2008).

Thiam also points to a one-paragraph letter from the Mauritanian embassy in Washington, D.C., which says that the embassy cannot "deliver any official document to him" and that he'll instead have to seek a "Judgment of Parentage" from a court in Mauritania. AR 41. To his mind, the letter indicates that he has been "stripp[ed] [] of his citizenship." Pet'r Br. 6–7. But that's a speculative stretch—and seems wrong to boot. If anything, the letter appears to identify a procedure by which he can get the Mauritanian documents he needs. The Board did not abuse its discretion in rejecting Thiam's unusual interpretation of the letter.

All in all, there is little evidence that the 2011 census made a relevant ethnic group in Mauritania stateless, and no evidence that it rendered Thiam stateless. The Board thus did not abuse its discretion when it rejected this aspect of Thiam's claim of "changed country conditions."

Thiam separately pins a claim of changed country conditions on the ground that the government has ramped up discrimination against Black Mauritanians. His first pieces of evidence on this score are some news articles and a presidential press release. But Thiam did not present this evidence to the Board. Our cases prohibit him from raising it now. *See Lin v. Holder*, 565 F.3d 971, 978–79 (6th Cir. 2009); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

4

As for the evidence he presented below, it does not consist of much. He identifies a few sentences from the State Department's 2017 Report. But they are short and vague, and Thiam never explains how they support his claims. "Throughout the year," one sentence says, "incidents of government retaliation against media deemed too outspoken increased." AR 144. "During the year," another sentence adds, "there were increased restrictions on [domestic and international human rights] groups, especially those investigating slavery." AR 150. But Thiam is not a member of the media or of a human rights group, making it difficult to see how this information bears on his claim.

Mauritania, we and the Board acknowledge, has a poor human rights record, and Black Mauritanians face ongoing governmental discrimination. But both of those things were true when Thiam originally applied for asylum. The Board permissibly rejected this generalized and conclusory evidence that does not show any material changes in the country with respect to his application. *Harchenko*, 379 F.3d at 410.

*Convention Against Torture claim.* An applicant who fails to qualify for asylum almost always necessarily fails to qualify for protection under the "more stringent" Convention Against Torture. *Akhtar v. Gonzales*, 406 F.3d 399, 406 (6th Cir. 2005). That is even more true when both claims are viewed through the lens of a motion to reopen, where the movant's evidence must make a material difference to the underlying claim for relief. *See Gafurova*, 911 F.3d at 327. Leaving no room for doubt, Thiam fails to supply any reason why we should treat his Convention Against Torture claim different from his asylum claim. His two claims thus rise and fall together.

We deny the petition for review.