**BANK OF HAWAII, a Hawaii corporation, Plaintiff,**

v.

**Ataji L. BALOS, Imata Kabua, Julian Riklon and Laji Taft, Defendants.**

**Civ. No. 88–00515.**

United States District Court, D. Hawaii.

Dec. 12, 1988.

Michael David Hong, David A. Kwock, Hong & Kwock, Arthur S. K. Fong, Honolulu, Hawaii, for plaintiff.

George Allen, Honolulu, Hawaii, for Ataji L. Balos.

Roy A. Vitousek, III, J. Robert Arnett, II, Cades Schutte Fleming & Wright, Kailua, Kona, Hawaii, for Imada Kabua and Julian Riklon.

ORDER DENYING DEFENDANT IMATA KABUA'S MOTION TO DISMISS COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION.*

SAMUEL P. KING, Senior District Judge.

This matter came on for hearing on November 21, 1988, on defendant Imata Kabua's Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction. Having carefully considered the written and oral arguments presented by counsel, the Court finds as follows:

## I. FACTS

The relevant jurisdictional facts are not disputed. This action arose from loans made by Plaintiff's Marshall Islands branch to the Kwajalein Atoll Corporation ("KAC"). Certain residents of the Marshall Islands, defendants herein, allegedly guaranteed the loans. At the time the loans were made, Plaintiff apparently was led to believe that KAC was a duly authorized entity under the laws of the Republic of the Marshall Islands ("RMI"). Plaintiff later learned that KAC was in fact an unincorporated association. Plaintiff now claims that the debts are due and owing. Although defendant Balos admitted this in his Answer, Mr. Kabua has not admitted liability.

## II. DISCUSSION

Defendant Kabua bases his motion to dismiss the complaint for lack of subject matter jurisdiction on his contention that

---

* I am indebted to my law clerk, Ms. Hannah Rabkin, for her assistance in drafting this decision.

defendants, as residents and citizens of the RMI, are not citizens of a "foreign state" within the meaning of 28 U.S.C. sec. 1332(a)(2), which provides for federal jurisdiction in actions between "citizens of a State and citizens or subjects of a foreign state."[1]

Kabua relies principally on *World Communications Corp. v. Micronesian Telecommunications Corp.*, 456 F.Supp. 1122 (D.Haw.1978) and on *Matter of Bowoon Sangsa Co., Ltd.*, 720 F.2d 595 (9th Cir. 1983). *World Communications* cited, among other cases, *People of Saipan v. United States Department of Interior*, 356 F.Supp. 645 (D.Haw.1973), *aff'd*, 502 F.2d 90 (9th Cir.1974) in holding that no diversity jurisdiction existed where the plaintiffs were Hawaii citizens and the defendant was a citizen of the Trust Territories of the Pacific Islands (the "TTPI"). The *People of Saipan* opinion, in turn, stressed the unique position of the TTPI under international law:

> Article 3 of the Trusteeship Agreement provides that the United States has "full powers of administration, legislation, and jurisdiction" over the Trust Territory; thus, although sovereignty technically resides elsewhere, as a practical matter the United States can exercise full sovereign power. Furthermore, because this is the only area designated as a "strategic" trust, the United States is responsible to the Security Council rather than the General Assembly for administration of the Trust Territory, the United States gets preferential treatment in economic and commercial matters, and the United States can unilaterally declare all or any part of the islands a closed area within which the United States may bar anyone (including the United Nations) and determine the extent to which trustee functions will be exercised.

*World Communications*, 456 F.Supp. at 1123–24, (citing *People of Saipan*, 356 F.Supp. at 653–54). The *World Communications* court concluded that since the TTPI was neither recognized by the United States as an independent sovereign, *see Klausner v. Levy*, 83 F.Supp. 599 (E.D.Va. 1949) nor "in every substantial sense ... an independent international entity", *see Murarka v. Bachrack Brothers*, 215 F.2d 547, 552 (2d Cir.1954), it did not qualify as a "foreign state" within the meaning of 28 U.S.C. sec. 1332.[2]

The critical issue, then, is whether circumstances have changed since these cases were decided such that the holding of *World Communications* should no longer apply to the Republic of the Marshall Islands, a member of the TTPI. The court finds that they have so changed, to the extent that, notwithstanding that the RMI technically retains membership in the TTPI, it has *de facto* become a foreign state.

Pursuant to Article 6 of the Trusteeship Agreement for the Former Japanese Mandated Islands, 61 Stat. 3301, T.I.A.S. 1665, 8 U.N.T.S. 189 (1947), in 1976 the people of the Marshall Islands opted to enter into a "free association" with the United States following the anticipated termination of the

---

**1.** Before the Foreign Sovereign Immunities Act of 1976 was enacted, sec. 1332 also provided for the jurisdiction of the United States district courts in suits against foreign states. Since subject matter jurisdiction in actions against foreign states is now comprehensively treated in 28 U.S.C. sec. 1330, the provisions in sec. 1332 referring to actions against "foreign states" were deleted with the enactment of the Foreign Sovereign Immunities Act. 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* sec. 3604, at 387–88 (2d ed. 1984).

**2.** More recently, in 1983 the Ninth Circuit held that the courts of Palau could not be considered "foreign" for purposes of limitations on liability and reversed a decision by the United States District Court for the District of Guam refusing to restrain an action brought in Palau. *Matter of Bowoon Sangsa Co., Ltd.*, 720 F.2d 595, 602 (9th Cir.1983). However, because this case involved interpretation of a statute other than sec. 1332, its relevance to the case at bar is questionable. See *World Communications*, 456 F.Supp. at 1124–25 (cases interpreting such terms as "foreign state" and "foreign country" as used in other statutes held inapposite because none of cases go beyond scope of particular statute under consideration therein.) Thus, even aside from the factual differences in the relations of Palau and the Marshall Islands, respectively, to the United States, because *Bowoon* interprets a different statute its interpretation is not binding in the instant action.

trusteeship. Compact of Free Association Act of 1985, 48 U.S.C.A. sec. 1681 (West 1987) (the "Compact"). On April 25, 1979, the Secretary of the Interior recognized the new governmental entity of the Republic of the Marshall Islands and delegated to it the executive, legislative and judicial functions of the government of the TTPI. Secretary of Interior Order No. 3039, 44 Fed.Reg. 28,116 (1979). This order also provided that the High Commissioner of the TTPI, appointed by the President with the advice and consent of the Senate, shall continue to exercise all authority necessary to carry out United States obligations under the Trusteeship Agreement. *Id.* at 28,117.

The Compact was approved by referendum in the RMI in September, 1983, and by the United States Congress in December, 1985. The President signed the Compact on January 14, 1986. By its terms, the Compact has the force and effect of a statute under the laws of the United States. Compact, sec. 471(c), 48 U.S.C.A. sec. 1681 (West 1987). The Compact provides for its effective date to be set by mutual agreement between the United States and the RMI.

On October 10, 1986, the two governments agreed that the effective dates of the Compact would be October 21, 1986 and October 1, 1985; the latter date pertaining to economic assistance provisions. The President proclaimed on November 3, 1986 that the Compact was in full force and effect as of October 21, 1986. Proclamation No. 5564, 51 Fed.Reg. 40,399 (1986). The President further announced that the RMI was self-governing and no longer subject to the Trusteeship. *Id.* at 40,400.

In April, 1987, the nomination of the United States diplomatic representative to the RMI was announced. On May 4, 1987, the government of the RMI was notified formally that the general relations between the two governments would be governed by international law as reflected in the Vienna Convention on Diplomatic Relations, and that the RMI representatives would be accorded the status accorded to heads of diplomatic missions. *Juda v. United States,* 13 Cl.Ct. 667, 677 (1987).

Plaintiff now contends that, despite the Compact of Free Association between the United States and the RMI, the Marshall Islands is not a "foreign state" within the meaning of sec. 1332 because the Trusteeship Agreement itself may not be terminated absent action by the Security Council of the United Nations. Plaintiff bases his contention on *Juda,* an action by Marshallese for compensation for damages caused by the United States' nuclear testing program conducted in the Marshall Islands between 1946 and 1958. The *Juda* court decided whether the Compact and subsequent actions by the two governments had the effect of withdrawing the consent of the United States to be sued under the Tucker Act on those claims, which in turn was dependent upon whether certain specific jurisdictional provisions of the Trusteeship Agreement—and hence the Agreement itself—were still in force. The Court of Claims interpreted the Agreement to read that it may not be terminated formally until the United Nations Security Council ("UNSC") has acted. 13 Cl.Ct. at 678–81. Since the UNSC had not done so, the jurisdictional provisions of the agreement were still in force.

The opinion also notes, however, that: Plaintiffs now are citizens of the RMI, a state whose capacity for self-government is officially recognized. RMI's capacity for self-government, and its competency to enter a status of free association with the United States, has been recognized by the UNTC, by both Houses of Congress, and by the President.

13 Cl.Ct. at 677. Further, the opinion expressly distinguishes the Compact from the Trusteeship Agreement:

(T)he Trusteeship Agreement and the Compact are two separate documents that involve different parties and raise differing legal issues. The Trusteeship Agreement is between the United States and the UNSC; the Compact is between the United States and the RMI. Trusteeship termination and the Compact implementation are two separate issues.

*Id.* at 678.

*Murarka v. Bachrack Brothers,* 215 F.2d 547 (2d Cir.1954) further instructs the

court. There, the Second Circuit held that a citizen of India was a citizen of a foreign state within the meaning of sec. 1332 despite the fact that, at the time the suit was filed, India was in transition between British rule and independence and consequently there was no "recognized government" of India. The *Murarka* court summed up the matter before it thus: "(u)nless form rather than substance is to govern, we think that in every substantial sense by the time this complaint was filed India had become an independent international entity and was so recognized by the United States." 215 F.2d at 552.

In light of the "substance over form" test articulated in *Murarka, Juda* undermines rather than supports plaintiff's position that the RMI is not a "foreign state". *See also* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* sec. 3604, at 391 (2d ed. 1984) ("It generally has been held that a foreign state is one formally recognized by the executive branch of the United States government."); *Betancourt v. Mut. Preserve Fund Life Ass'n*, 101 F. 305 (S.D.N.Y.1900) (diversity jurisdiction extended to suit against Cuban citizen even though Cuba then occupied by United States since United States had officially declared that Cuban people were "free and independent").

More persuasive is the thorough analysis by Judge Sweet in *Morgan Guar. Trust Co. of N.Y. v. Republic of Palau*, 639 F.Supp. 706 (S.D.N.Y.1986). *Morgan Trust Co.* held that Palau is a "foreign state" for purposes of the Foreign Sovereign Immunities Act (the "FSIA"). Judge Sweet reviewed *People of Saipan, World Communications, Bowoon* and *Sablan Construction Co. v. Gov't of the Trust Territory of the Pacific Islands*, 526 F.Supp. 135 (D.N. Mariana Islands 1981), and found them nondispositive not merely because *Sablan* alone interprets the term in the context of the FSIA, but also because political developments which occurred subsequent to those cases have created a situation of *de facto* foreign statehood. 639 F.Supp. at 713–16.

Judge Sweet's holding reiterates the factor stressed by the *Murarka* court—that substance should govern over form. Although *Morgan Trust Co.* does not directly interpret the diversity statute, its reasoning and result are sound. In the present case, highly significant changes have occurred with respect to the relationship between the United States and the RMI. Both the Congress and the President have indicated that the RMI is henceforth to be treated as an independent sovereign. The fact that the Trust Agreement—in form—may technically yet be in effect does not alter the substantive change in the status of the RMI. The court finds, therefore, that for purposes of the diversity statute, the RMI is indeed a foreign state.

Accordingly, the Motion to Dismiss for Lack of Subject Matter Jurisdiction should be DENIED, and it is SO ORDERED.