COLE, Circuit Judge,
concurring in part and concurring in the judgment.
I agree that we lack jurisdiction to review the original decision of the Board of Immigration Appeals (“BIA”) and that this court’s precedent blocks review of the BIA’s decision not to reopen sua sponte Gor’s immigration proceedings. I write separately to explain why I believe Kucana v. Holder, — U.S.-, 130 S.Ct. 827, — L.Ed.2d - (2010), indicates that this precedent is in error.
The Government conflates two potential jurisdictional obstacles to appellate review: the jurisdictional bar enacted by § 1252(a)(2)(B)(ii) and the purported absence of meaningful standards against which to evaluate BIA decisions not to reopen proceedings sua sponte. In its brief, the Government argues that the statutory bar encompasses BIA decisions not to reopen immigration proceedings sua sponte, citing in support our decisions in Barry v. Mukasey, 524 F.3d 721 (6th Cir.2008), and Harchenko v. I.N.S., 379 F.3d 405 (6th Cir.2004). These decisions do not rely on § 1252(a)(2)(B)(ii), but rather hold that we lack jurisdiction because the regulation authorizing sua sponte reopening, 8 C.F.R. § 1003.2, “provides no standard against which to judge the agency’s exercise of discretion.” See Harchenko, 379 F.3d at 410-11. This holding, which rests on principles of administrative law, is distinct from the jurisdictional bar in § 1252(a)(2)(B)(ii).[1]
While the Supreme Court in Kucana expressly addressed only whether § 1252(a) (2) (B) (ii) bars appellate review of BIA decisions to deny timely motions to reopen and disclaimed expressing any opinion on whether the courts may review BIA decisions not to reopen removal proceedings sua sponte, see Kucana, 130 S.Ct. at 839 n. 18, the Court’s rationale nonetheless suggests that neither § 1252(a)(2)(B)(ii) nor any dearth of meaningful standards of review precludes our consideration of such decisions. Kucana held that § 1252(a)(2)(B) bars review only of decisions made discretionary by the Immigration and Nationality Act (“INA”) itself, and not of decisions made discretionary by regulations promulgated pursuant to the INA.[2] As we and our sister courts *197 have recognized, the BIA’s authority to reopen proceedings sua sponte is made discretionary by regulation. See Harchenko, 379 F.3d at 410-11; see also Mosere v. Mukasey, 552 F.3d 397, 400-01 (4th Cir.2009) (collecting cases from other circuits). Thus, under Kucana, § 1252(a)(2)(B)(ii) does not bar judicial review of such decisions. See 130 S.Ct. at 831. Finding otherwise would ignore the strong presumption in favor of judicial review and raise significant separation of powers concerns. Cf. id. at 839-MO.[3]
Moreover, the outcome of Kucana casts implicit but considerable doubt on the continued validity of Barry and Harchenko. As the lead opinion recognizes, the regulation at issue in Kucana, 8 C.F.R. § 1003.2, is the same one that we and other circuits have held defines the BIA’s discretion over sua sponte reopening so broadly as to preclude review. Yet Kucana held — the BIA’s equally unfettered discretion to deny motions to reopen notwithstanding— that the appellate courts retain jurisdiction to review such decisions, without any suggestion that their review might be impeded by a dearth of meaningful standards to apply.[4] Indeed, we and our sister courts routinely review BIA decisions denying motions to reopen without encountering any obstacle created by a lack of meaningful standards of review. We have held that the BIA abuses its discretion to deny motions to reopen when it acts arbitrarily, irrationally or contrary to law. Lindor v. Holder, 317 Fed.Appx. 492, 497 (6th Cir. 2009) (citing Sswajje v. Ashcroft, 350 F.3d 528, 532 (6th Cir.2003)). To ensure that the BIA has exercised its discretion appropriately, we require that it give more than cursory, summary, or conclusory statements in support of its decision. Id. at 498 (citing Daneshvar v. Ashcroft, 355 F.3d 615, 626 (6th Cir.2004)). The BIA must provide a rational basis for its decision, including an explanation of any departure from established policies, and the decision may not rest on an impermissible basis, such as invidious discrimination against a particular race or group. Id. (citing Allabani v. Gonzales, 402 F.3d 668, 675 (6th Cir.2005)). Similar standards might be readily and meaningfully applied in reviewing refusals to reopen proceedings sua sponte. Cf. Tamenut, 521 F.3d at 1006-07 (Beam, J., dissenting) (making similar argument).
This is not to say that the standard and scope of review we apply should be the *198 same as when reviewing the BIA’s denial of a timely motion to reopen. Under 8 U.S.C. § 1229a(c)(7)(C)(i), petitioners generally have ninety days from the entry of a removal order to move for reopening; after this deadline has expired, the only avenue of relief is for the BIA to reopen proceedings sua sponte. Applying the same level of scrutiny when the ninety days has elapsed as when a timely motion has been filed would tend to undercut the statutory deadline. Our review must reflect that the BIA has broad discretion in this area and appropriately may set a higher bar to reopen proceedings sua sponte than following a timely motion. Cf. Kucana, 130 S.Ct. at 838 (noting that BIA decisions must be accorded “due respect”). Even so, the BIA cannot exercise its authority arbitrarily, irrationally, or in a manner that is contrary to law or the Constitution.[5]
In this ease, the BIA’s decision declining to reopen proceedings did not address the extraordinary circumstances of Tushar Gor’s hearing, instead stating only that the claims Gor raises could have been presented on appeal. Thus, on the strength of a single sentence, Gor is now to be deported from the United States — the country in which he has lived since the age of four— to India — a country that he has visited three times for a total period of less than three months — despite the IJ’s apparent violation of his due process rights and the colorable legal arguments that his deportation is contrary to law. Yet we are barred from even considering whether the BIA’s cursory dismissal of Gor’s claims was adequate in light of these circumstances and the reasonable possibility that Gor’s ability to retain counsel and present his arguments on appeal also was impeded by the IJ’s failure to provide a list of free legal-service providers. Given Kucana’s implicit recognition that meaningful standards of review exist against which to evaluate BIA decisions made pursuant to 8 C.F.R. § 1003.2, I can see no good reason why we should not be able to assess whether the BIA appropriately exercised its authority here. Cf. Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (noting that bar to judicial review of agency action where there are no standards to apply is “a very narrow exception” applicable only in “rare instances”).
Our sister courts have recognized that, following the Attorney General’s 2002 streamlining reforms — which cut the number of BIA members from twenty-three to eleven and allowed single-member review of most appeals — board members must review an enormous number of deportation cases, resulting in errors of disturbing magnitude and frequency. See, e.g., Kadia v. Gonzales, 501 F.3d 817, 820-21 (7th Cir.2007) (noting that one board member admitted to reviewing more than fifty cases in one day and arguing that “[r]epeated egregious failures of the Immigration Court and the Board to exercise care *199 commensurate with the stakes in an asylum case can be understood, but not excused, as consequences of a crushing workload that the executive and legislative branches of the federal government have refused to alleviate”); Benslimane v. Gonzales, 430 F.3d 828, 829 (7th Cir.2005) (collecting cases from the Second, Third, Seventh and Ninth Circuits where BIA adjudication “has fallen below the minimum standards of legal justice”); Berishaj v. Ashcroft, 378 F.3d 314, 331 (3d Cir.2004) (reversing a decision that “was an embarrassment to the Agency on multiple levels” and noting that while the 2002 reforms may “save an overburdened BIA from unnecessary and redundant tasks,” they are not “a license for the BIA to say ‘not our problem’ ”). Particularly in light of the present state of affairs at the BIA, we should not so easily and unnecessarily relinquish our critical role in ensuring that the agency properly exercises its awesome authority over deportation.

. Chief Judge Batchelder's concurring opinion dismisses the view that the Government relies on both § 1252(a)(2)(B)(ii) and our precedent as a troubling and deliberate mischaracterization of the Government's argument. The opinion argues that the Government does not rely on § 1252(a)(2)(B)(ii) nor mention Ghazali v. Holder, 585 F.3d 289 (6th Cir.2009), which it interprets as holding that § 1252(a)(2)(B)(ii) proscribes judicial review of BIA denials of timely motions to reopen. In fact, the first sentence of the Government’s substantive analysis explicitly addresses § 1252(a)(2)(B)(ii), (see Resp't Br. 12), and the remainder of the Government's argument follows from this starting point. Moreover, it comes as no surprise that the Government does not mention Ghazali, as the decision does not concern a motion to reopen, but a motion to reconsider, and does not hold that we lack jurisdiction over either. See 585 F.3d at 291. Thus, while little rests on the point— both the lead opinion and this opinion acknowledge that Kucana explicitly addresses only § 1252(a)(2)(B)(ii) — to say that the Government relies on both § 1252(a)(2)(B)(ii) and our precedent seems an entirely accurate characterization.

. The Court noted that "any lingering doubt" regarding this reading of § 1252(a)(2)(B)(ii) was dispelled by "the presumption favoring judicial review of administrative action” absent "clear and convincing evidence" to the contrary. Kucana, 130 S.Ct. at 839 (internal quotation marks omitted). While Kucana does not hold that Congress may never delegate legislative authority to curtail judicial review to an executive agency, any such delegation would raise significant separation of powers concerns. Compare United States v. *197 Dryden, 563 F.3d 1168, 1170-71 (10th Cir.2009) and Owens v. Republic of Sudan, 531 F.3d 884, 888-93 (D.C.Cir.2008) with Miller v. F.C.C., 66 F.3d 1140, 1144 (11th Cir.1995) and United States v. Mitchell, 18 F.3d 1355, 1360 n. 7 (7th Cir.1994).

. While two Courts of Appeals have noted that 8 C.F.R. § 1003.2(a) is promulgated pursuant to 8 U.S.C. § 1103, see Lenis v. U.S. Attorney Gen., 525 F.3d 1291, 1293 (11th Cir. 2008); Tamenut v. Mukasey, 521 F.3d 1000, 1004 (8th Cir.2008), Kucana indicates that this general grant of regulatory authority does not block judicial review. The BIA's authority over timely motions to reopen, which courts retain jurisdiction to review under Kucana, derives from the same statute. In fact, § 1103 is in a different subchapter of the INA to that specified by § 1252(a)(2)(B)(ii). See Kucana, 130 S.Ct. at 840-41 (Alito, J., concurring).

. The Ninth Circuit has pointed to the limitations on motions to reopen in 8 U.S.C. § 1229a(c)(7) as further constraining the BIA’s discretion. See Ekimian v. I.N.S., 303 F.3d 1153, 1157 (9th Cir.2002). Kucana made clear, however, that "[sjection 1229a(c)(7) ... is not directed to the agency’s discretion to grant or deny motions to reopen. In the main, it simply lays out the requirements an alien must fulfill when filing a motion to reopen.” 130 S.Ct. at 833 n. 6 (internal quotation marks omitted). The same is true of the regulatory provisions implementing § 1229a(c)(7) in 8 C.F.R. § 1003.2(c)(2)-(3).

. Indeed, several of our sister courts have suggested — even while employing language as sweeping as that in Barry and Harchenko— that they retain jurisdiction to review constitutional challenges to BIA refusals to reopen proceedings sua sponte. See Tamenut, 521 F.3d at 1005 ("Although this court lacks jurisdiction over Tamenut’s challenge to the BIA's decision not to reopen sua sponte, we generally do have jurisdiction over any colorable constitutional claim.”); see also Nawaz v. Holder, 314 Fed.Appx. 736, 736 (5th Cir.2009) ("While we do not have jurisdiction to consider Nawaz's non-constitutional challenges to the BIA’s refusal to reopen his removal proceedings sua sponte, we retain jurisdiction to consider constitutional challenges that were raised before the BIA.”); Lenis, 525 F.3d at 1294 (noting that "an appellate court may have jurisdiction over constitutional claims related to the BIA's decision not to exercise its sua sponte power”).