WILLIAMS, Senior Circuit Judge,
dissenting in part, concurring in part, and concurring in the judgment:
I cannot agree that the Secretary’s interpretation of 42 U.S.C. § 1320a-7(b) is *830 valid, and accordingly would remand the case to the district court for remand to her for a permissible interpretation. If her action is valid on its own terms, however, as the court holds, I agree on the remand for the purposes stated by Judge Ginsburg — for the Secretary to explain the departure from prior precedents in fixing the terms of exclusion.
As the panel correctly notes, the appellants argue that the clause requires a “ ‘generic’ relationship to fraud,” Maj. Op. at 818, or, as a practical matter, that convictions triggering a sanction based on the “fraud” element of § 1320a-7(b)(l) must have been based on findings of all the regular elements of the traditional crime of fraud. Most notably, they argue, scienter must have been an element of the crime' — • an element conspicuously missing from appellants’ convictions, which depended on the “responsible corporate officer” doctrine. The Secretary argues instead for a “circumstance-specific” approach, id. at 819, which, as she explains, means that the “relation” requirement is satisfied if there is a “nexus or common sense connection between ... the conduct giving rise to the offense and the fraud in connection with the delivery of the health care item or service.” Goldenheim v. Inspector General, Dec. No. CR1883, 2009 WL 1176331 (HHS Dept.App.Bd. Jan. 9, 2009), Joint Appendix (“J.A.”) 590; see also Appellees’ Br. 22-23.
The court upholds the Secretary’s view, evidently finding it “unambiguously” supported by the statute regardless of whether Chevron v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), applies. See Maj. Op. at 818-19; see also id. at 823-24. The court quite correctly notes that the phrase “relating to” is extraordinarily broad, quoting dictionary paraphrases such as “to stand in some relation.” Id. at 820. In fact a “relationship” can be one of hostility or enmity, or can be orthogonal, so that for a literalist the statute is virtually meaningless. Taken literally, the provision does not even ask for a “substantial relationship” or a “close relationship”; it calls only for a “relationship,” however attenuated. Happily, the parties in fact appear to agree on narrowing the field a little, both assuming that the relationship must be one of overlap between the crime of fraud and the facts shown (or necessary to be shown*) in appellants’ conviction of misdemeanor misbranding. Indeed, the context compels that narrowing of the range — and more.
Appellants state what they view as the required overlap fairly clearly: just as common law fraud requires a showing of scienter, the crime of conviction must have required proof of such an element. The Secretary’s idea of the necessary overlap is more free-floating — some sort of “nexus” between the convictions and fraud (or the other bases for exclusion).
*831 But even this free-floating overlap (if it is to have any boundaries at all) requires some concept of “fraud, theft, embezzlement ... or other financial misconduct.” Suppose, for example, that the Secretary was acting under the last and vaguest of these terms, and the individuals had been convicted of filing false environmental reports. To prevail, the Secretary surely would have to offer a concept of financial misconduct that embraced such filings. One can talk of “circumstance-specific” relationships till one is blue in the face, but in the end deciding whether the necessary overlap exists requires a definition (or at least an idea) of the types of conviction triggering § 1320a-7(b)(l)(A). The conceptual battle cannot be avoided.
The parties’ somewhat synthetic battle between “generic fraud” and the “circumstance-specific” approach leads the court into an extensive showing that the statute is laced with requirements that in the end will require burrowing into facts. See Maj. Op. at 820-22. The court argues that a statute rife with such intellectual exercises is not very likely to have clearly limited the Secretary to “generic fraud” for the fraud aspect of § 1320-7(b)(l)(A). But the sense of all those “factual relationships” depends on conceptual relationships — exemplified in the question whether the “financial misconduct” criterion would allow exclusion for a conviction for false environmental filings. If the Secretary’s view is correct, virtually any overlap between the facts required for fraud and those involved in (or required for) the offense of conviction is enough.
The meaning of a statute must not be confused with its simple linguistic potential. As we’ve seen, the linguistic potential of crime or “misdemeanor relating to fraud” is almost infinite. The Secretary, though on common ground with appellants in understanding that the relation must be one of overlap, purports to see no other limit. But this is not the way lawyers read a statute. They put it into context. Here the context suggests a requirement of at least some approximation of the moral turpitude associated with “fraud” itself. Thus Justice Cardozo, construing § 9(c) of the National Recovery Act in Panama Refining Co. v. Ryan, 293 U.S. 388, 433, 55 S.Ct. 241, 79 L.Ed. 446 (1935), acknowledged that § 9(c) alone was inadequate to supply an intelligible answer to the question of when the President was to exercise the delegated power to interrupt interstate oil transportation, but he went on to examine the statute as a whole and concluded that the power could be exercised only for “hot oil,” i.e., oil produced in excess of statutory quotas. Id. at 435^16, 55 S.Ct. 241. Thus the context compelled a non-literal, relatively narrow interpretation. For similar context-based narrowings, see, e.g., Owens v. Republic of Sudan, 531 F.3d 884, 893 (D.C.Cir.2008); Phelps Dodge Corp. v. Federal Mine Safety and Health Review Commission, 681 F.2d 1189, 1192 (9th Cir. 1982). So too here. Very troublingly, without such an effort at seeking the legal meaning of the disputed clause, we have a reading by the Secretary that offers none of the “precision and guidance [that] are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way.” FCC v. Fox Television Stations, Inc., — U.S.-, 132 S.Ct. 2307, 2317, 183 L.Ed.2d 234 (2012). That failing is especially acute for an action that excludes appellants from pursuing careers in the pharmaceutical industry — where they’ve spent their lifetimes accumulating industry-specific human capital. See J.A. 390, 428, 483. Compare Greene v. McElroy, 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).
“Misdemeanor” and “fraud” have well-established meanings. The Secretary need only prescribe some specific meaning for the word “related.” It might require *832 that an excluded individuals conviction rest on findings of all the elements of fraud, as the appellants argue; or it might require only that it rest on findings of the person’s culpable responsibility for a material misrepresentation. It is for the Secretary to say, subject of course to judicial review. But an invocation of “nexus,” though it fits linguistically, is simply not a legal interpretation as that process is normally understood. It’s more accurately seen as a refusal to interpret.
Given the absence of an analytically reasonable interpretation by the Secretary, and the Secretary’s leeway under Chevron to reject appellants’ proposed interpretation, I would remand to the district court to remand to the Secretary to articulate a meaning of 42 U.S.C. § 1320a-7(b) that is consistent with standard principles of legal interpretation.